My name is Colin Jorgensen. I represent the Defendant Appellants Jonathan Dupree, who is a County Animal Control Officer, and Kathy Botsford, who is the Director of the County's Animal Control Operation. I will share time today with Mr. Michael Mosley, who represents David Miles, who is the Director of the City's Animal Shelter. I'd like to reserve five minutes for rebuttal, although I may eat into that if you have a lot of questions. This is a straightforward interlocutory appeal on qualified immunity. We believe that two things are clear under the undisputed facts of this case. First, the facts of this case do not establish a violation of Mr. Lunon's constitutionally protected due process rights. Second, even if they did, the constitutional right that he asserts in this case is nowhere near clearly established. There is no obvious case that places beyond debate the right that is being asserted in this case. There is no robust consensus of cases from other jurisdictions either. If anything, there is a robust consensus of cases that counsel in the opposite direction, that there is in fact not a constitutionally protected due process right to pre-deprivation notice and process for an animal owner when that owner's animal is apprehended stray. It's important to distinguish between those facts, as in this case, and many cases involving seizures directly from the possession of an owner where there is in fact a due process right to pre-deprivation notice and process. Now qualified immunity doesn't take care of the official capacity claims. Are those before us? Which arguments are addressing those? Those are asserted against Ms. Botsford, who I represent, and Mr. Miles, who Mr. Mosley represents, but actually they are a custom claim and a training claim. If there is no underlying constitutional violation, then those claims get swept away along with the underlying constitutional claim, because there cannot be an unconstitutional... I'm not sure that's true of the due process claim. Well, the due process right that's being asserted is a right to pre-deprivation notice and process. If that doesn't apply under these facts, if there is no right to that... Oh, okay. That's the global argument. Right. Exactly, Judge Logan. And really, if you decide that argument as we are asking you to decide it today, whether you just agree with me that there's no constitutional violation at all, the whole case should be... the district court's order should be reversed and the case should be dismissed. Your brief on that question seems to imply that the result would be different if B.B. had a tag as opposed to a chip. I don't understand that due process distinction. I did not mean to imply that, and if I did, I would like to retract it. You're making the most aggressive argument, which it doesn't matter what ownership indicates. There is no due process notice and hearing obligation, no matter how the dog is identified, if it's a stray animal. Well, I think we would be fine with there being a pre-deprivation process of placing the animal on a multi-day hold at a public shelter so that the owner can come claim the animal before impoundment and whatever happens after that, whether it's sterilization and adoption, euthanizing, or whatever else. And that did happen in this case. It's important to recognize that this dog was placed on a five-day hold at a public shelter, but Mr. Reynolds, to an owner who was identifiable. The owner was not identified, and that is undisputed. Nobody with the county or the city identified the owner. I think we also... Your question was identifiable. Yes. In theory, yes. And with a microchip scan, it's been asserted and we don't have any reason to dispute that the dog did have a microchip implanted. What's your case for your due process position with a dog that's tagged? Well... So that anyone with decent vision could, by looking at the collar or the tag, identify the owner. That question is not in play in this case, because as the district court said explicitly in its order, it's undisputed that Officer Dupree, when he apprehended the dog, did not notice a tag. Mr. Lunden does claim that when his dog escaped, it was wearing a tag, but there is no tag. Officer Dupree did not notice a tag, and no tag was with the collar when the dog was impounded. The collar stayed there. Nobody else noticed a tag. There's no evidence that there was a tag for him to even notice. And he's testified clearly, repeatedly, that he looked for a tag and there wasn't one. I don't feel like we need to push as far as... No, there's negligence all over the place here, and the question is, when is it a due process violation? There is, you know, perhaps negligence all over the place, and that's how this case was... On both sides. Right, you mean from the owner and the officials? Yeah. Sure, yeah, and I agree with that. And negligence, of course, is not actionable under 1983. And this case was originally pled as a negligence case in state court. Another thing I think that is important to recognize is that Mr. Lunden availed himself of the post-deprivation remedy, which restored his dog to him. Now, he will point out, I'm sure his counsel will point out, that the dog had been sterilized, but some of these cases we rely upon... Well, that's where I think the due process violation is not clear. And I want to ask opposing counsel about that. Okay. Because the only, as I understand the facts, the only aspect of this for which there was not an adequate post-deprivation remedy was the spaying. Sterilization, correct. The seizure, the hold, the ownership, all those issues, there's an adequate post-deprivation remedy. Which he availed himself of. Therefore, there's no federal due process violation, by definition, procedural. I agree. So... On sterilization, there are... This isn't argued very precisely, it seems to me, and maybe this wasn't pled precisely as to the spaying. I agree. What are the... What's the case law as to the spaying? I agree with that. And I would direct you to the Fabricant decision from the Second Circuit about sterilization. That was the claim fairly clearly articulated there that it was the sterilization that that plaintiff alleged violated her due process rights. And the Second Circuit disagreed and said no constitutional violation despite the sterilization. I would also suggest that the cases Schultz from the Sixth Circuit in 2013, O'Keefe from the Central District of Illinois, the District Court is almost identical facts. Stanley from the Supreme Court of South Carolina in 2004, and even Lemare from the Vermont Supreme Court in 1999. Those five cases form a robust consensus, all agreeing that this case does not present a constitutional violation. And certainly when you take those cases together, and the only case in the arguable opposite direction is Porter from the Seventh Circuit, there's not a robust consensus that supports a constitutional claim here. And Porter is completely distinguishable because the animals were seized directly from the owner's possession with a caretaker. And they simultaneously seized records showing the owner's name and contact information, yet did not provide any sort of notice. What's the answer if the county and or the shelter were systematically violating a due process obligation to give notice and an opportunity to reclaim the dog after a seizure? Well, How, if we were to conclude that and then agree with you on the You can't conclude that on the facts of this case because all the testimony from multiple witnesses demonstrates that it was actually their practice to scan animals for microchips. Is the issue in the case? Not without an underlying constitutional violation, which I think is why the claims against Ms. Botsford and Mr. Miles also That is, would be the alleged constitutional violation. Right. That would be a bona fide The consistent widespread repeat of the same constitutional violation. But if it's not a constitutional violation, there can be no custom claim. And there's also I thought there was evidence that one of the supervisors knew that the underlings were not doing the scans, doing the I think you're talking about Fred Gooley and he's between Ms. Botsford and Officer Dupree. He trained Officer Dupree. He said that they scanned about 90 percent of the time and he explained I mean, you're probably thinking of that other 10 percent. And he explained that the other 10 percent was when animals were too young to have a microchip or too dangerous to to safely scan. And so he his testimony is I thought it was stronger than that for the plaintiffs, but I'll reread it. I intended to save some time for rebuttal, and I've got about 20 seconds, so I better sit down unless you have further questions. Thank you, Your Honor. May it please the court. Judge Logan, hello. I represent David N. Miles III and his individual capacity for a singular claim of failure to train. An individual capacity claim for failure to train is what we're here on, on interlocutory appeal on the denial of qualified immunity. Yes, the city of North Iraq, whom he works for, is also sued, but that's not before the court, can't be before the court on interlocutory appeal. The policies are extremely clear. Pulaski County Procedures, and this is at Joint Appendix 342, requires the county's officer to make a kennel card, to scan the animal for an implanted microchip, to note the information from the scan on the kennel card. It says, all animals shall be scanned, and identification where the microchip scanner is located, that's also in the policy. It says, it's up on the shelf. The county folks know how to use the microchip scanner. They must give North Little Rock Animal Shelter, all, that is the county's employees, all pertinent information about any animal in the county's custody, and then a separate ordinance, which is at Joint Appendix 469, the director or his personnel shall give notice to the owner, if known, within 48 hours of an impounded dog. There is no evidence in this case that David Miles was aware of any deficiency in giving notice, any deficiency in microchip scanning dogs, any deficiency in not putting pertinent information on kennel cards by the county. But there's certainly no evidence that Miles, or any city employee, ever failed to microchip scan, failed to fill out a kennel card correctly. And the two policies... Can you take 20 seconds on the interrelationship between the two governments in handling these dogs? Miles does not supervise county employees. No, I know that. How does it work? Well, how it used to work before this happened. How did it work in this case? The county was allowed to use our shelter, the city's shelter. But who sees the dogs? The county? The county would seize... If it's a stray dog, who goes out to get it? The county? It depends. If it's within the city limits and a city officer, we do have officers who do that, the city would seize it. And under the policies, our directives, then the city officer. It's very clear. But this was a county officer. This was a county dog. So he seized it and then... It's their responsibility to put all pertinent information to microchip, to do the kennel card, to identify the owner and to notify the owner. And then how does it end up with Miles, the dog? Well, Miles is the supervisor, but the dog... How does it end up with the city? The dog is then remitted to the shelter. We do oversee the shelter. And so we look at a kennel... All the dogs end up there. The county has no shelter. They may now, but they didn't then. They had two pens then. So then there's a kennel card. There's a kennel card. And we look at the kennel card and there's nothing on there indicating an owner. We hold it for longer than the mandatory hold, which is five days. We hold it for 13 days. It is adopted out. Two days later, it's sterilized. But the bottom line is this. This is a very unique legal issue under Section 1983. As you know, Judge Loken, Judge Cobus, Judge Colleton, Section 1983 does not permit respondeant superior liability. That is Miles, the supervisor who had no involvement with this particular dog in any event, can't be held liable, nor can the city, for the alleged wrongdoing of a city employee under respondeant superior. If you take this to its logical conclusion like Judge Miller did, his honor book below, you're permitting respondeant superior against the city for something the county did. Except for failure to train. No, we don't train county officers. I know that, but you said the claim is not respondeant superior. It's failure to train. And your answer is failure to train who? None of our employees were liable on this point. That's correct. And there is a specific passage in the... Well, let me be clear if I understand what you just said, Judge Loken. When Judge Colleton laughed, it made me wonder if I was... Judge, who is it? The city is required to train the city employees. And there's no city employee implicated here. But I will say this. There is on a joint appendix at 882, part of the district court's order. The district court says, although Miles appears to have no supervisory authority over animal controls officers, he acknowledged that he was aware of the inadequacies of the shelter procedures in that his employees regularly assumed animal control had filled out the kennel car completely. The term from the district court's order, he acknowledged he was aware of the inadequacies, is there is no record support for it. Half the arguments made by the plaintiff as to Miles individually, there is no record support for it. Miles didn't, quote unquote, sign off on any failure by any county. We assumed they were following their policy. And we certainly were following our policy. There is no underlying constitutional violation vis-a-vis failure to train. Miles is entitled to qualified immunity either under the first prong or the second prong of the defense. Thank you very much. Thank you. Mr. Kane. May I proceed, your honor? Yes, your counsel. Good morning, your honors. May it please the court. My name is Terrence Kane. I represent Daryl Lunnan. I'm joined by Kenya Davenport, who represented Mr. Lunnan in the district court. And then the state court proceedings. Your honor, if one has property within the meaning of the 14th Amendment due process clause, and a state actor is going to deprive one of that property, one is entitled to pre-deprivation notice and an opportunity to contest the deprivation. Pre-deprivation notice is required. Not if there's adequate post-deprivation. Not if, correct. If, however, a pre-deprivation notice is practicable, then pre-deprivation notice is required. Here, pre-deprivation notice was practicable because Pulaski County and North Little Rock both had on-site chip scanners for animals. I don't think it's actionable if the post-deprivation remedies are adequate. But a post-deprivation- Even a pre-deprivation process would have been desirable. But pre-deprivation is required if pre-deprivation notice is required, if it's practicable. That's too categorical. That's simply not true. The case law is much more distinguishing than that. Well, the feasibility of pre-deprivation notice is considered. For example, if the deprivation is unauthorized or random, then pre-deprivation notice isn't practicable, and a post-deprivation remedy will suffice. Well, I thought your point is you can't do post-deprivation remedy here anyway because the dog's been spayed. There's no post-deprivation remedy. The post-deprivation remedy is inadequate. It's insufficient. In this case, given the facts. Yes. So it's not really an issue. Well, I don't think you even get to the post-deprivation remedy question because- I know you don't, but I'm saying even if you did, you're saying it wouldn't be adequate here. It would not be adequate. But what about the fact that these are stray dogs? I'm wondering why the county has an obligation to do anything as far as searching for the owner. Well, at the threshold level, the dog is property. It's recognized property within the meaning of the 14th Amendment due process clause. But once the owner lets it go- Well, Mr. Leonard, he didn't let it go, but it did escape, and it was found at large. Now, at that point, due process requires the government to make some effort, not a Herculean effort, but some effort to try to ascertain who the owner is. Why do you say that? Because the dog is property within the meaning of- What's the controlling case that supports that? Porter v. de Blasio in the 7th Circuit. What about Fabricant? Fabricant didn't involve an animal. Fabricant is distinguishable in that here, this was a readily identifiable owner who had an income-generating property. There, the owner was already identified. Well, it's just a split of authority on that question. All right, neither is controlling on this court. So you made an assertion as to controlling law, and we've got competing cases from other circuits. We do, because the 8th Circuit is silent on this unique question. We don't have controlling. That's correct. Nobody's arguing that there's 8th Circuit precedent on point or precedent- How do you get around qualified immunity then, at a minimum, if there's no authority, or if there's divided authority? Well, the question becomes, is it an obvious case? And that is, is it obvious that if you have a dog with a tattoo in the ear, and a dog that's microchipped, and you have a Pulaski County facility with a microchip scanner, and a mandate to scan dogs, and you have a North Little Rock facility with a mandate to scan dogs, and then you don't scan the dog, is it obvious that that will result in a dog not being scanned, and then put out for adoption, euthanized- Which notice? Notice when? Pardon, Your Honor? Notice when? Notice after the seizure? Notice at the end of the five-day holding period? There are a number of places where notice could have been given. Notice before the dog is euthanized, or sterilized, or adopted out. So we are in the fabricant world of spaying is the key. Just notice that we've seized a stray dog, or notice that we've impounded. Right, and before- Even if an identifiable owner has a right to notice at that point, subject to post-deprivation remedies, this is not that case. This is a different case. Yes, it is a different- Because that notice would not have led to injury that can't be, it's irreparable injury, so to speak. Well, had Mr. Nunn been notified prior to sterilizing the dog and adopting it out, and I think the government was required to notify him before those incidences, then the state would have satisfied his due process obligation. I know what you think the government's obligated to do, but there isn't case law establishing that. Porter v. de Blasio establishes that. Which is not controlling. Well, of course, Your Honor, it's not controlling, but it establishes the principle- It also wasn't a stray dog, I don't think, was it? No, these were horses that were in the custody of someone who wasn't the owner, and then the government seized the horses, and then adopted them out. Yeah, but then you have that Illinois District Court that said later, Porter doesn't govern a stray dog case. Well, it didn't exactly say that, but I'm glad you brought up O'Keeffe. All right, tell me what you think of O'Keeffe. I mean, that's pretty close to this case, and it goes the other way. Well, it's not as close as it seems at first glance. All right, tell me why. Well, for one thing, the deprivation in O'Keeffe was unauthorized. You had a police officer found the dog in the possession of three parties removed from the owner, took the dog, and gave the dog to a different person. That was plainly an unauthorized deprivation, in which case, you can't have pre-deprivation notice. In this case, this was authorized. Jonathan Dupree took custody of the dog, deliberately chose not to scan it. Kathy Botsford, who you were mentioning earlier, said that they don't do that all the time. That was her quote at the Raplevin hearing. The not doing all the time she was talking about was they don't scan the dogs all the time. Then when the dog was taken to the North Little Rock Animal Shelter, the policy at that shelter is if a person other than a North Little Rock animal control officer brings a dog in, that person is required to scan. And North Little Rock has a scanner, too. And North Little Rock then relies on a kennel card, which in this case, under the scan option, that was left blank. And so that was interpreted to mean the dog could have been scanned, or the dog could not have been scanned. But the dog wasn't scanned in North Little Rock, either. So one, you had an unauthorized deprivation in O'Keeffe. This was authorized. Second, both the magistrate judge in O'Keeffe and the United States district judge who reviewed the magistrate judge's work in O'Keeffe made a point to say that the municipality in O'Keeffe didn't have a scanner. And neither judge was going to impose a requirement on the municipality that it have a scanner. And the nearest scanner in O'Keeffe was 10 miles away at another municipality. Here, both municipalities have scanners already. O'Keeffe was just saying the court's not going to require the municipality to do something it wasn't already doing. Whereas here, all Mr. London is saying, do what you are doing anyway. And analyzing the Matthews v. Eldridge sliding scale- If you say that, then well, you're not giving them much of an incentive to get a scanner if they're just buying into a lot of litigation. Well, but if- Are you sure they're worse off for getting a scanner constitutionally? That they take on more obligations? I analogize it to this. They're not worse off in this respect. Here's an analogy I draw. And King versus- Hishon v. King is filing a Title VII case involving partnership promises and the like. Chief Justice Berger said that Title VII doesn't require that an employer offer job benefits, but if it does offer them, they have to be offered on a non-discriminatory basis. The analogy that I draw here is the due process clause may not require that municipalities get scanners for the purposes of making some modest attempt to find the owner of the dogs that are picked up. But once you do have the scanners, you have to use them because at that point, you recognize that animals are microchipped for identification purposes. The municipalities recognize the significance of that property interest, particularly when you have an income-generating animal like Mr. Lennon did here. This wasn't simply a pet. And it's in your best interest so that you won't have the argument that I was entitled to notice and that you didn't give it, but have a scanner, which both North Little Rock and Pulaski County have, and scan the dogs as they come in. This was an obligation the municipalities took on themselves,  Now, in terms of, I think the Matthews v. Eldridge sliding scale test is important here because it touches on whether a post-deprivation proceeding is adequate. Mr. Lennon isn't asking Pulaski County or North Little Rock to do anything new. Neither municipality will have to spend one more penny, other than what they're spending now, to avoid this very thing. Well, that's not necessarily true, right? The testimony here is that the officer was the only officer on duty that day, right? And that he was waiting. There was another call in at the time, right? You have a scanner, but you don't have enough officers to use it. If you're required now to scan, you may have to hire more officers, right? Perhaps so. But the requirement, and it is one, was one that Pulaski County imposed on itself. It's not a may scan. It is a shall scan. And it's not that scan if you have time. It is a mandate that Pulaski County imposed upon itself. So the county can hardly be heard to complain that there's an obligation to scan, which I don't understand the federal relevance of that. The federal relevance is, under Matthews v. Eldridge, how difficult, if you agree that, if one understands that there's a property interest here, and that property interest is a very weak one for a stray dog that has to be balanced against the public interest in the government controlling stray dogs, it can be dangerous. Well, there was no danger argument raised here. I understand it at a general level. Yes, you have to have animal control. No question there. But in administering animal control and carrying out that function, it could result in a material deprivation of an income-producing asset like happened here. And in order to ensure that that doesn't happen, what should the government do? And my answer to that is, do what you committed to do in the first place. Scan the animal that came in. Now, if you don't have enough personnel to do it, that should be a matter that should be taken to the county legislature and the county animal control, ask the county legislature for some relief from that obligation. Additionally, Jonathan Dupree... So you're assuming if the dog had a tag that even I could read, that the procedural due process property interest is there? There's a procedural due process interest there, even if the dog wasn't tagged, insofar as there must be some attempt, a lesser attempt if the owner is not known or knowable. But if the owner is knowable, as it is in this case, one can't simply just turn a blind eye to using the chip scanner that's already in place, which you didn't have in O'Keeffe. There was no chip scanner at all. But the whole assumption is that there is a property interest that there's a federal mandate to protect. If one has property within the meaning of the due process clause... The Supreme Court addressed the procedural due process of animal owners. Well, the Supreme Court of the United States hasn't. But the Supreme Court of the United States has laid down principles that's been followed by all these cases. Matthew, the Eldridge is so general that I can't begin to say it automatically applies here or even arguably applies here. I think it automatically applies because once you recognize that there's a property interest, Matthew sets forth the front... I think the Supreme Court 19th century cases are very spooky on whether there is a property interest at all. And certainly when the dog is loose, an animal is loose, a pet is loose. Well, you say the 19th century? Well, Matthews was in 1976. Matthews has nothing to do with animals, wild or otherwise. Matthews has to do with what the government has to do prior to depriving a person of his property. Yes, I'm talking about whether the property interest is recognized by the U.S. Supreme Court, that you're taking as an assumption. The Supreme Court of the United States has not said in any case that a person has a property interest in a dog. And of course, it probably wouldn't anyway because whether something... The circuit has been very ambiguous on that. Whether something is property or not anyway is determined by reference to state law. So the Supreme Court of the United States would only either agree with what a state has said on that question or disagree. If the state recognizes a property interest, yeah, then that has due process implications. And the state of Arkansas recognizes... Closing counsel argues that the state doesn't recognize the property interest you're talking about. Then it seems it's pretty peculiar for the state to say that there's no property interest in a dog and yet there's these mandates to try to find the owner. Well, they like to collect money for licenses and so forth. Perhaps so. But doing that is a recognition that there is a property interest that would be deprived, that a person would be deprived of in the event the county, the government knows or can know who the owner is. Therefore, the government must make some effort, lesser effort if it's a stray for whom the owner is not known or knowable, but a bit more effort if the owner is knowable. And here that the owner was knowable both through the microchip and the tattoo in the ear. And the government just disregarded its own obligation that it imposed on itself to scan for a microchip. Your Honor, I see I'm out of time. Unless there's any more questions, I thank the courts for its time and ask that it affirm the district court. Thank you, counsel. Is there time for rebuttal? He had seconds remaining. Unless the court has any questions, I will forego the 15 seconds that I carefully reserve for rebuttal. I think the case has been very well briefed and argued. And it's interesting to say the least. And we'll take it under advisement. Do our best with it. Thank you, counsel.